**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHANNON D. RITTER, | Case No. SA CV 17-01631-RAO |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| NANCY A. BERRYHILL, Deputy Commissioner of Operations of Social Security, | |
| Defendant. | |

## I.    INTRODUCTION

Plaintiff Shannon D. Ritter ("Plaintiff") challenges the Commissioner's denial of her application for a period of disability and disability insurance benefits ("DIB"). For the reasons stated below, the decision of the Commissioner is REVERSED and REMANDED.

## II.    PROCEEDINGS BELOW

On May 30, 2014, Plaintiff applied for DIB alleging disability beginning June 20, 2013. (Administrative Record ("AR") 65-66, 78.) Her application was denied initially on September 15, 2014, and upon reconsideration on January 7, 2015. (AR 95, 101.) Plaintiff filed a written request for hearing, and a hearing was

held on June 14, 2016. (AR 41, 111.) Represented by counsel, Plaintiff appeared and testified, along with an impartial vocational expert. (AR 43-64.) On July 21, 2016, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[1] from June 20, 2013 through the date of decision. (AR 34-35.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 1.) Plaintiff filed this action on September 19, 2017. (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 20, 2013, her alleged onset date ("AOD"). (AR 23.) At **step two**, the ALJ found that Plaintiff has the following severe impairments: fibromyalgia; chronic fatigue syndrome; musculoligamentous strain/sprain of the lumbar and thoracic spine; tick-borne illness; post-treatment Lyme disease syndrome; ulcerative colitis/proclitis and immune dysfunction; anxiety; and depression. (*Id.*) At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.*)

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> [P]erform sedentary work . . . except: the claimant can lift and/or carry ten pounds occasionally, less than ten pounds frequently; the claimant can stand or walk for two hours out of an eight-hour workday; the claimant can sit for six hours out of an eight-hour workday; the claimant can occasionally perform postural activities;

---

[1] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

the claimant cannot climb ladders, ropes or scaffolds or work at unprotected heights; the claimant must avoid concentrated exposure to fumes, odors, dust, gases, changes in temperature and vibration; the claimant is limited to simple tasks, simple work related decisions and object oriented tasks; the claimant can occasionally interact with coworkers and the general public.

(AR 25.)

At **step four**, the ALJ found that Plaintiff was unable to perform any past relevant work. (AR 32.) At **step five**, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity," the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (AR 33.) Accordingly, the ALJ determined that Plaintiff has not been under a disability from the AOD through the date of decision. (AR 34-35.)

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir.

2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see Robbins*, 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## IV. <u>DISCUSSION</u>

Plaintiff raises the following issues for review: (1) whether the ALJ properly weighed the opinion of Plaintiff's treating physician; (2) whether the ALJ properly weighed the opinions of the non-treating medical sources; (3) whether the ALJ's credibility determination is supported by substantial evidence; and (4) whether the ALJ properly rejected the lay witnesses' statements. (*See* Joint Stipulation ("JS") 11, 24, 27, 38.) For the reasons below, the Court agrees with Plaintiff regarding the credibility determination and remands on that ground.

### A. <u>The ALJ's Credibility Determination Is Not Supported By Substantial Evidence</u>

Plaintiff argues that the ALJ failed to provide specific, clear and convincing reasons for rejecting her subjective testimony. (*See* JS 27.) The Commissioner contends that the ALJ provided legally valid reasons for rejecting Plaintiff's testimony. (*See* JS 35.)

#### 1. Plaintiff's Testimony

Plaintiff testified that she stopped working on June 20, 2013 because it was "just the point at which [she] couldn't go any further." (AR 45.) She explained that she began decreasing her workload in the fall of 2012. (*Id.*) Plaintiff's

business partner could no longer rely on her because she made "a lot of mistakes" and could no longer do the things that she used to do all the time, such as balance a checkbook. (*Id.*) Plaintiff stated that "it began to get very frustrating" and she was becoming "unreliable." (*Id.*) Plaintiff testified that she was "probably in denial for a while" about her limitations until her business partner told her that she could no longer rely on Plaintiff's work because Plaintiff was making mistakes that cost them money. (*Id.*)

Plaintiff attributes her poor work performance to her fatigue and pain. (*Id.*) She explained that she has cognitive impairments from her ulcerative colitis, which also causes "a lot of discomfort," frequent interruptions in her work, and "a lot of anxiety issues." (AR 45-46.)

Plaintiff stated that at the hearing, she had physical pain and "kind of a fogginess." (AR 46.) She explained that it was difficult for her to concentrate, which she thinks is what made it difficult to do her work. (*Id.*)

Plaintiff testified that she was diagnosed with Lyme disease. (AR 50.) She underwent a "very intensive" ten-month IV treatment in 2014, after which she felt some improvement. (AR 46.) This made Plaintiff feel "very encouraged," as if she was going to "get [her] life back" and "go back to the way things used to be." (*Id.*) But Plaintiff "quickly found out that wasn't the case." (*Id.*) Plaintiff explained that she would get up and take a shower, but then she would need to go back to bed. (*Id.*) Plaintiff stated that it seems like she is "going backwards." (AR 47.) She testified that a second round of IV antibiotics did not give her any relief, and she now feels like she is "close to where [she] was before [she] even started treatment." (*Id.*)

Plaintiff was later diagnosed with post-treatment Lyme disease syndrome. (AR 51.) Plaintiff also has been diagnosed with anaplasmosis and mycoplasmosis. (*Id.*) She cannot distinguish between the effects of each condition. (*Id.*)

///

On a good day, mornings are "tough" for Plaintiff, and it takes her about an hour and a half to get out of bed. (*Id.*) Plaintiff must set multiple alarms and she "fight[s] to gain consciousness." (*Id.*) Once she gets out of bed, Plaintiff usually takes her dog to the back yard and makes something to eat. (*Id.*) She then sits or lies down for "maybe an hour," and sometimes she goes back to sleep for the rest of the day. (*Id.*) Plaintiff "tr[ies] to get some kind of movement in" on a good day, such as taking her dog for a walk around the block. (*Id.*) Plaintiff also explained that there is a restorative yoga class near her house, which helps her because she can "stretch and get some movement in [her] joints." (*Id.*) If Plaintiff takes a walk or does yoga, she usually takes a nap at home afterward. (*Id.*) Plaintiff also frequently takes a nap after eating lunch. (*Id.*) On days when Plaintiff has "a little more energy," she calls doctors' offices, pharmacies, and insurance companies, and she sometimes looks for new treatments on the internet. (AR 48.) After an hour, Plaintiff is "pretty much exhausted," especially if she has talked on the phone. (*Id.*)

On a bad day, Plaintiff sleeps in bed or on the couch all day. (*Id.*) Plaintiff testified that she has about two or three bad days per week, or about ten per month. (AR 49.)

Plaintiff has joint pain similar to arthritis and pain in her shoulder blades that "sometimes can become unbearable." (AR 46.) If Plaintiff sits too long, about 45 minutes to an hour, she develops "sharp, shooting pains" from her tailbone, requiring her to get up and move around. (*Id.*; AR 49) Plaintiff testified that she needs to get up a lot, and if she stands for about 15 minutes, her feet go numb due to "a lot of neuropathy." (AR 49, 52.) If Plaintiff stands for too long, she needs to lie down. (*Id.*) Plaintiff stated that she does not lift or carry many things because she sometimes has severe joint pain in her wrist. (*Id.*) Most days, she wakes up with a headache. (AR 52.) Plaintiff also testified that she has nerve damage that affects her ears. (*Id.*)

///

To try to lessen the pain, Plaintiff takes strong painkillers and goes to sleep. (*Id.*) Plaintiff has a prescription for ketamine, but it makes her "just dead to the world," so she does not like taking it. (*Id.*) Plaintiff also has a prescription for low-dose naltrexone, but it does not help alleviate her pain. (AR 52-53.) Plaintiff takes Advil or another anti-inflammatory to dull the pain enough so that she can remain awake. (AR 52.) Plaintiff also takes a lot of herbs and omega-3 oils to help with inflammation, which are "somewhat beneficial." (AR 53.) Plaintiff explained that they help her enough that she could attend the hearing that day. (*Id.*)

Plaintiff testified that her fatigue can "come on suddenly" with no warning, "kind of a fainting type feeling." (AR 53.) Plaintiff then feels "like [her] head's in a cloud." (*Id.*) She explained that her fatigue can then linger, and even after going to sleep, she wakes up feeling fatigued. (AR 54.) Plaintiff testified that on days when she needs to walk or stand a lot, including the day of the hearing, she tends to sleep for the rest of the day. (*See id.*)

Plaintiff explained that she is unable to work because she is unable to leave the house most days. (AR 50.) Her fatigue and pain cause mental distraction, which, in addition to her cognitive impairments, "makes it impossible." (*Id.*) Plaintiff testified that she cannot process information well, and she cannot even make a salad sometimes because she "can't figure out . . . how to get the pieces all together." (*Id.*) Plaintiff also expressed her appreciation for frozen meals. (*Id.*)

Plaintiff can drive a vehicle "on a very local and limited basis." (*Id.*) She does not do chores at home. (*Id.*)

Plaintiff described her anxiety as an eight or nine on a ten-point scale. (AR 54-55.) When she is in public places, her anxiety is a ten. (AR 55.) Plaintiff stated that her anxiety is "one of the more disturbing things [she] deal[s] with" because sounds and the constant movement of people make her panic and freeze. (*Id.*) Her anxiety, in combination with her ulcerative colitis, can stimulate "a bunch of cramping and sharp pains in [her] stomach," leading to "some unfortunate

7

outcomes." (AR 55-56.) Plaintiff explained that while watching a two-hour movie at home, she may pause the movie to go to the bathroom five times. (AR 56.) Plaintiff stated that some days are not as severe, but the severe days occur three to four times per week. (*Id.*) Plaintiff has been seen by three gastrointestinal physicians who have all informed her that ulcerative colitis is an autoimmune disorder and "there's nothing you can do about it." (AR 57.) Plaintiff uses Canasa suppositories, which temporarily help her flare-ups. (*See id.*)

Plaintiff testified that her primary doctor has told her to manage her expectations because they have done everything that they can do with respect to conventional treatments and medicine. (*Id.*) Plaintiff stated that she has also done everything that she can do with respect to non-conventional medicine. (*Id.*) Plaintiff's doctor informed her that part of recovering is "learning to accept [her] new normal," accepting that things will not go back to the way that Plaintiff wants them to be, and learning how to live with her new abilities. (AR 57-58.)

### 2. Plaintiff's Adult Function Report

The ALJ also considered and discounted Plaintiff's statements in her Adult Function Report, which was completed in June 2014. (AR 26-27; *see* AR 219-27.)

Plaintiff stated that she experiences "an overwhelming and debilitating fatigue" after taking a shower and getting dressed. (AR 219.) This fatigue, in addition to her neuropathy and joint pain, makes it impossible for her to focus on basic tasks. (*Id.*) Plaintiff stated that she does not drive anywhere because she experiences confusion and gets lost. (*Id.*) Plaintiff also explained that she will drive a short distance if she has to, but she chooses not to because it is tiring. (AR 222.) Due to fatigue, it takes Plaintiff one to two hours to get out of bed. (AR 220.) Plaintiff explained that throughout the day, she administers four infusions through a Hickman catheter. (*Id.*) Plaintiff spends most of the day in bed, although she tries to take a walk a few times each week. (*Id.*) Plaintiff indicated that she does not take care of any pets, and her boyfriend feeds and takes out the dog. (*Id.*)

Plaintiff explained that she had to focus while filling out the form, and that made her dizzy and exhausted. (*Id.*; AR 226) She is "tired all the time" but has trouble sleeping. (AR 220) Plaintiff reported that she sits in a chair in the shower, washes her hair only once per week, and shaves only occasionally. (*Id.*) Plaintiff reported no problems with dressing herself, feeding herself, or using the toilet. (*Id.*) Plaintiff stated that she needs to use a worksheet to remind her to take her medications. (AR 221.)

Plaintiff prepares frozen meals because she does not have enough energy to cook or clean, and "even following a simple recipe is overwhelming." (*Id.*) She does not do any household chores or yard work because when she tries to do something, she is "complete exhausted" within 30 minutes. (AR 221-22.) Once a week, Plaintiff spends 30 minutes shopping for groceries. (AR 222.) She can count change, but she cannot pay bills, handle a savings account, or use a checkbook because she is easily overwhelmed and confused. (*Id.*)

Plaintiff watches television for at least 12 hours per day and reads for about one hour, although she usually falls asleep. (AR 223.) Plaintiff does not socialize with anyone because social events and phone conversations are exhausting. (*Id.*)

Plaintiff indicated that her condition affects her ability to lift, squat, bend, stand, reach, walk, kneel, talk, climb stairs, remember, complete tasks, concentrate, understand, and follow instructions. (AR 224.) Plaintiff stated that if she walks slowly, she can walk for about 20 minutes before needing to rest for 20 minutes. (*Id.*) Plaintiff can pay attention for 30 minutes. (*Id.*) Plaintiff also indicated that she does not finish what she starts, cannot follow written instructions well due to confusion and exhaustion, and forgets spoken instructions. (*Id.*) Plaintiff stated that she does not handle stress or changes in routine well. (AR 225.)

### 3. Applicable Legal Standards

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina*

*v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036) (internal quotation marks omitted). If so, and if the ALJ does not find evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony regarding the severity of his symptoms. *Id*. The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "General findings are insufficient." *Lester*, 81 F.3d at 834.

### 4. Discussion

"After careful consideration of the evidence," the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 29.) The ALJ relied on the following reasons: (1) activities of daily living; (2) Plaintiff's course of treatment; (3) the ALJ's observations of Plaintiff during the hearing; and (4) lack of objective medical evidence to support the alleged severity of symptoms. (*See* AR 27, 29.) No malingering allegation was made, and therefore, the ALJ's reasons must be "clear and convincing."

### a. Reason No. 1: Activities of Daily Living

The ALJ found that Plaintiff's activities of daily living were "somewhat limited," but the ALJ observed that some of the abilities required to perform these activities are inconsistent with disability and are the same as the abilities necessary for employment. (AR 27.) The ALJ noted that Plaintiff could perform personal

grooming activities, prepare simple meals, grocery shop, occasionally take her dog for walks, attend yoga classes, and occasionally drive.  (*Id.*)

Inconsistencies between symptom allegations and daily activities may act as a clear and convincing reason to discount a claimant's credibility.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991).  But a claimant need not be utterly incapacitated to obtain benefits.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  "If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations."  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *accord Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

The fact that Plaintiff performs some daily activities does not detract from her overall credibility, as the record does not show that this consumes a substantial part of Plaintiff's day.  Plaintiff indicated that she goes to the grocery store once per week for about 30 minutes.  (AR 222-23.)  Although the ALJ noted that Plaintiff can "prepare simple meals," Plaintiff testified that she has "no physical energy to cook," is overwhelmed when following a simple recipe, and sometimes cannot figure out how to make a salad.  (AR 50, 221.)  Plaintiff explained that she primarily prepares frozen meals.  (AR 50, 221.)  Plaintiff's meal preparation does not require a substantial amount of time or effort, and the ALJ failed to explain how this translates into an ability to perform regularly in the workplace.  *See Orn*, 495 F.3d at 639 (stating that an ALJ erred in rejecting a claimant's testimony due to daily activities that were "so undemanding that they cannot be said to bear a meaningful relationship to the activities of the workplace").

With respect to Plaintiff's yoga classes, Plaintiff testified that she sometimes attends a restorative yoga class near her house on her "good days."  (AR 47.)  Again, there is no indication that this constitutes a substantial part of Plaintiff's day,

as Plaintiff indicated that she has time after class to take a nap before having lunch. (*See id.*) Additionally, some activities "are not necessarily transferable to the work setting with regard to the impact of pain" because "[a] patient may do these activities *despite* pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved." *Vertigan*, 260 F.3d at 1050. Plaintiff explained that she goes to yoga so she can "stretch and get some movement in [her] joints" (AR 47), and Plaintiff reported to her physician that yoga "helps a lot" with her pain (AR 751). Plaintiff also testified that on a good day, she may take her dog for a walk around the block in an effort to "try to get some kind of movement in." (AR 47.)

Further, the mere ability to perform some tasks is not necessarily indicative of an ability to perform work activities because "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair*, 885 F.2d at 603; *see also Molina*, 674 F.3d at 1112-13 (the ALJ may discredit a claimant who "participat[es] in everyday activities indicating capacities that are transferable to a work setting"). The critical difference between such activities "and activities in a full-time job are that a person has more flexibility in scheduling the former . . . , can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (cited with approval in *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014)). Indeed, Plaintiff stated that she is sometimes "too tired" to bathe and requires a chair when she showers (AR 220), her boyfriend helps take care of the dog (AR 220), and she rests and naps for most of the day (*see* AR 47-48, 54, 223).

In sum, the Court finds that this reason is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

### b. Reason No. 2: Plaintiff's Course of Treatment

The ALJ observed that Plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual." (AR 27.) The ALJ noted that Plaintiff had "significantly improved symptoms" and minimal follow-up after her Lyme disease treatment. (*Id.*) In January 2015, Plaintiff's energy was "much better," and she reported doing yoga three times a week in addition to walking. (AR 718.) A February 2015 sleep study to evaluate a possible sleep-related breathing disorder resulted in normal findings. (AR 727.) Treatment notes from June 2015 state that Plaintiff's fibromyalgia and symptoms of chronic fatigue resolved after treatment for Lyme disease. (AR 714.) Plaintiff reported "some fatigue," but it was not disabling. (*Id.*) Plaintiff also reported that she had not returned for follow-ups because she had been feeling well. (*Id.*) Plaintiff continued to walk and do yoga three times per week. (*Id.*) The ALJ determined that these records were inconsistent with the alleged severity of Plaintiff's functional limitations. (AR 27.)

Other treatment notes that were not acknowledged by the ALJ show that Plaintiff's "significantly improved symptoms" may not have continued. In September 2015, Plaintiff reported that she was still "crashing" with fatigue. (AR 751.) In April 2016, Plaintiff reported "severe fatigue 'all the time,'" generalized aches, and "stabbing pains" in her neck. (AR 747.) The ALJ did not consider these reports of worsening symptoms, which are consistent with Plaintiff's testimony about symptoms returning after a period of temporary improvement. (*See* AR 46-47.) It is well settled that ALJs "must review the whole record; they cannot cherry-pick evidence to support their findings." *Bostwich v. Colvin*, 13-cv-1936-LAB, 2015 WL 12532350, at *2 (S.D. Cal. Mar. 30, 2015) (citing *Holohan*, 246 F.3d at 1207); *Holohan*, 246 F.3d at 1207 (an ALJ cannot selectively rely on some entries in administrative records and ignore others); *Costa v. Berryhill*, 700 F. App'x 651, 653 (9th Cir. 2017) (an ALJ is not permitted to "cherry-pick from mixed results"

when reviewing a claimant's response to treatment (citing *Garrison*, 759 F.3d at 1017 & n.23)).

The Court finds that this reason is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

### c. Reason No. 3: ALJ's Observations During the Hearing

The ALJ also found that Plaintiff's conduct at the hearing was inconsistent with her allegations of having severe difficulty with concentration. (AR 27.) The ALJ noted that Plaintiff did not demonstrate any difficulty concentrating during the hearing, as Plaintiff "appeared to process the questions without difficulty, and to respond to the questions appropriately and without delay." (*Id.*) The ALJ concluded that Plaintiff "paid attention throughout the hearing." (*Id.*)

Although "[t]he inclusion of the ALJ's personal observations does not render the decision improper," *Morgan*, 169 F.3d at 600 (citations omitted), here, the ALJ erred in rejecting Plaintiff's testimony based on his brief observations at the hearing. First, Plaintiff's ability to pay attention during the 31-minute hearing (*see* AR 43, 64) is not inconsistent with her assertion that she can pay attention for 30 minutes at a time (AR 224). Additionally, Plaintiff testified that her fatigue and pain cause mental distraction, and she has good days and bad days with respect to her fatigue. (*See* AR 47-50.) In light of the varying nature of Plaintiff's symptoms, the ALJ improperly discounted Plaintiff's credibility based on her ability to pay attention at the hearing. *See Segura v. Colvin*, No. ED CV 15-1311 AS, 2016 WL 3078746, at *6 (C.D. Cal. May 31, 2016), *judgment entered*, 2016 WL 3090214 (C.D. Cal. May 31, 2016) (finding that an ALJ erred in rejecting a claimant's statements about having difficulty concentrating based on the ALJ's observations during a 26-minute hearing, "particularly where [the claimant's] testimony suggests that [the claimant's] symptoms wax and wane"); *see also Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984) ("The fact that a claimant does not exhibit physical manifestations of prolonged pain at the hearing provides little, if any, support for

the ALJ's ultimate conclusion that the claimant is not disabled or that [her] allegations of constant pain are not credible." (citing *Day v. Weinberger*, 522 F.2d 1154, 1156-57 (9th Cir. 1975))).

The Court finds that this reason is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

### d.     Reason No. 4: Lack of Supporting Objective Medical Evidence

The remaining reason for discounting Plaintiff's subjective testimony—lack of supporting objective evidence—cannot form the sole basis for discounting symptom testimony. *See Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("[A] finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain.").

The ALJ did not give clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's credibility.  Accordingly, remand is warranted on this issue.

### B.     The Court Declines to Address Plaintiff's Remaining Arguments

Having found that remand is warranted, the Court declines to address Plaintiff's remaining arguments. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

///

### C.     Remand For Further Administrative Proceedings

Because further administrative review could remedy the ALJ's errors, remand for further administrative proceedings, rather than an award of benefits, is warranted here. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (remanding for an award of benefits is appropriate in rare circumstances).  Before ordering remand for an award of benefits, three requirements must be met: (1) the Court must conclude that the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the Court must conclude that the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) the Court must conclude that if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id.* (citations omitted).  Even if all three requirements are met, the Court retains flexibility to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* (citation omitted).

Here, remand for further administrative proceedings is appropriate.  The Court finds that the ALJ failed to provide clear and convincing reasons supported by substantial evidence to discount the credibility of Plaintiff's subjective testimony.  On remand, the ALJ shall reassess Plaintiff's subjective allegations. The ALJ shall then reassess Plaintiff's RFC in light of the reassessment of Plaintiff's subjective allegations and proceed through step four and step five to determine what work, if any, Plaintiff is capable of performing.

///
///
///
///
///
///

## V.    CONCLUSION

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter for further proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.


DATED:  August 15, 2018                    _____
                                                                     /s/
                                           ROZELLA A. OLIVER
                                           UNITED STATES MAGISTRATE JUDGE



### NOTICE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**

17